| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

| | |
|---|---|
| ERNEST BOWMAN, | |
| Petitioner, | **MEMORANDUM & ORDER** |
| – against – | |
| WILLIAM LEE, Superintendent, Green Haven Correctional Facility, | 10-CV-951 (ERK) |
| Respondent. | |

KORMAN, J.:

I assume familiarity with the underlying facts and circumstances of this case. Briefly, petitioner Ernest Bowman approached Juan Manuel Olivera, pushed him to the ground, pointed a firearm at him, and demanded money. Olivera gave Bowman $100, and Bowman fled the scene of the crime. A friend of Olivera's, with whom Olivera had discussed the crime and Bowman's physical appearance, later recognized Bowman and notified Olivera. Olivera then notified the police, and Bowman was apprehended at that time. Bowman was convicted by jury trial of robbery in the first degree. Bowman advances four arguments in support of his petition.

*I.     Right to Confrontation*

Bowman argues that his right to confrontation was violated by the admission of Olivera's testimony that a friend of Olivera's, who was not called as a witness, recognized and later identified Bowman based on the description Olivera gave him. Pet. at 2, ECF No. 1; Def. App. Br. at 36, ECF No. 17. Significantly, Bowman was apprehended four days after the crime was committed when that friend, to whom Olivera had described Bowman, recognized Bowman and notified Olivera. The relevant portion of Olivera's testimony is as follows.

> [Prosecutor:]   And as you were working at Arias Grocery at about 930 p.m., what happened?

1

| | |
|---|---|
| [Olivera:] | Well, one of my friends, I had commented to him about what had happened. And I told him that if he saw that person to – |
| [Defense Counsel:] | Objection. |
| The Court: | Objection overruled. |
| [Olivera:] | -- to let me know. |

***

| | |
|---|---|
| [Prosecutor:] | When you told your friend what happened, what you were [sic] referring to? |
| [Olivera:] | When what had happened to me. But that I had been robbed. |
| [Prosecutor:] | And what did you tell your friend in this conversation? |
| [Defense Counsel:] | Objection, Judge. |

***

| | |
|---|---|
| The Court: | Objection to the last question is sustained. Ask another question. |
| [Prosecutor:] | When you told your friend what happened, what else did you tell your friend besides what happened? |
| [Olivera:] | I tried to tell him to describe the person, what he looked like. And he said he knew him. |
| [Prosecutor:] | And what happened, drawing your attention on September 22, 2004 about 9:30 p.m., when you were at your job? |
| [Olivera:] | My friend, he saw him. That he was -- |
| [Defense Counsel:] | Objection. |
| The Court: | You weren't present when your friend saw anybody. You were in the store, correct? |
| [Olivera:] | Yes, in my job. |
| The Court: | So you don't know what your friend saw because you weren't there, correct? |

| [Olivera:] | My friend came to my job to let me know. |
| The Court: | And you had a conversation with your friend, correct? At some point your friend came to the store and had a conversation with you, correct? |
| [Olivera:] | Yes. |

Tr. 216-19, ECF No. 17-4. The prosecutor then went on to solicit testimony from Olivera regarding the circumstances of Bowman's apprehension by police. There was no further testimony regarding the content of the friend's statements to Olivera.

On direct appeal, the Appellate Division held that "defendant's contention that he was denied due process and the right of confrontation by the complainant's testimony regarding statements made by a friend who was not called as a witness . . . is without merit, as the complainant's testimony was not elicited for its truth, but rather, to explain the sequence of events leading up to the defendant's arrest." *Bowman*, 872 N.Y.S.2d 150, 151-52 (N.Y. App. Div. 2009) (citing *People v. Barboza*, 805 N.Y.S.2d 657 (N.Y. App. Div. 2005); *People v. Newland*, 775 N.Y.S.2d 308 (N.Y. App. Div. 2004)), *leave to app. denied*, 909 N.E.2d 586 (N.Y. 2009).

Here, Bowman principally relies upon *Crawford v. Washington*, in which the Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004). Nevertheless, *Crawford* does not apply because Olivera's friend's statements were not testimonial because they did not have a "'primary purpose'" of "'establish[ing] or prov[ing] past events potentially relevant to criminal prosecution.'" *Bullcoming v. New Mexico*, --- U.S. ----, 131 S. Ct. 2705, 2714 n.6 (2011) (alterations in original) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)); *see also id.* at 2720 (When the "primary purpose" of a statement is "not to create a record for trial," there is no concern

3

under the Confrontation Clause. (Sotomayor, J., concurring)). Thus, the Appellate Division's holding is not contrary to or an unreasonable application of *Crawford*.

This consideration aside, unlike the circumstances in *Mason v. Scully*, 16 F.3d 38 (2d Cir. 1994), the statement made by the hearsay declaration was harmless under the standard set forth in *Brecht v. Abramson*, 507 U.S. 619 (1993) because the evidence against Bowman was compelling. Indeed, Olivera's identification of Bowman was unequivocal, it was not made by a stranger, and there was no defense case to rebut that evidence.

## II.     *Prosecutorial Misconduct*

Bowman argues that there were three categories of prosecutorial misconduct that denied him a fair trial: (1) exceeding the four corners of the evidence, (2) burden-shifting arguments, and (3) vouching, disparaging, and inflammatory remarks. Pet. at 3; Def. App. Br. at 52. On direct appeal, the Appellate Division held that Bowman "was not denied a fair trial by certain statements made by the prosecutor in summation" because "[t]he remarks at issue were a fair response to the defendant's summation, constituted fair comment on or reasonable inferences drawn from the evidence, or were harmless." *Bowman*, 872 N.Y.S.2d at 152 (citations omitted).

### A.     *Exceeding the Four Corners of the Evidence*

Bowman argues that several of the prosecutor's statements in summation violated his right to due process under *Berger v. United States*, in which the Supreme Court observed that a prosecutor's "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." 295 U.S. 78, 88 (1935); *see also* Def. App. Br. at 54 (quoting *Berger*). Specifically, Bowman argues that the prosecutor (a) "filled in the blanks in Olivera's testimony about his conversation with his friend to draw the impermissible inference that Olivera had described his assailant as having a deformed eye," (b) "told the jury, without any evidentiary basis, that the

4

'incident itself' 'probably took just three minutes,'" and (c) "gave the jurors the benefit of his own apparent expertise as to both how and why robberies occur and how to tell a witness is lying" by making improper statements with regard to Bowman's conduct and the potential penalties for perjury. Def. App. Br. at 53-54.

In *Berger*, on which Bowman relies, the Supreme Court observed that the case against Harry Berger "may be properly characterized as weak – depending, as it did, upon the testimony of . . . an accomplice with a long criminal record." 295 U.S. at 88. Indeed, the Court explained that "[i]f the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached." *Id*. (citing cases). In the present case, the victim of the robbery – Olivera – testified that Bowman was the individual who robbed him. Olivera's testimony was not meaningfully impeached, and he is entirely dissimilar to the "accomplice with a long criminal record" who formed the basis of the "weak" case against Berger. Due the strength of the case against Bowman, even if the prosecutor erred in making the statements to which Bowman now objects, such error was harmless.

### B.    *Burden-Shifting Arguments*

Bowman argues that "[t]he prosecutor attempted to shift the burden of proof to the defense in a variety of ways." Def. App. Br. at 54. In support of this argument, Bowman primarily relies upon the prosecutor's following statement in summation:

> So if you're sitting back there in the deliberation room and it comes in your mind after examining Mr. Olivera's testimony and talking about it, well, you know, I don't believe Mr. Olivera isn't telling the truth. That's the end of your deliberations. As soon as that statement is made, I don't believe Mr. Olivera isn't telling the truth, then you have to convict the defendant because there is no reasonable explanation how he could be mistaken.

Tr. at 354-55. Bowman fails to cite any federal case law in support of this argument. Moreover, the relevant Supreme Court case, *Darden v. Wainwright*, 477 U.S. 168 (1986), does not provide support for Bowman's contention. In *Darden*, the Supreme Court held that to warrant granting

5

the writ, the prosecutorial misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also United States v. Elias,* 285 F.3d 183, 190 (2d Cir. 2002) (Typically, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." (quoting *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir. 1999))). Even if the prosecutor's comments were inappropriate, they did not result in substantial prejudice to Bowman in light of defense counsel's summation, the evidence adduced at trial, and the trial judge's instructions that "all comments or remarks made by counsel . . . is [sic] to be disregarded[,]" Tr. at 388, and that Bowman "has nothing to prove" because "[t]he burden of proof is always on the D.A[,]" Tr. at 393.

### C. *Vouching, Disparaging, and Inflammatory Remarks*

Bowman argues that the prosecutor "vouch[ed] for the strength of the People's case and the credibility of the prosecution witnesses." Def. App. Br. at 59. Specifically, Bowman argues that the following statements violated his right to a fair trial: (a) the prosecutor's statement in summation that "the prosecution has put every single card on the table," and they made out "a royal flush"; (b) statements "vouch[ing] for Olivera's credibility," (c) the disparagement of defense counsel, and (d) the characterization of this case as one "about violence." Def. App. Br. at 59-61. As discussed above, the Supreme Court has held that to grant habeas relief for prosecutorial misconduct, such statements must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly,* 416 U.S. at 643). Even if the prosecutor's comments were inappropriate, they do not meet the *Darden* standard. More significantly, the Appellate Division rejected this argument on the merits. *Bowman*, 872 N.Y.S.2d at 152.

### III. Ineffective Assistance of Counsel

Bowman argues that he was denied effective assistance of trial counsel. First, Bowman argues that trial counsel failed to object adequately to the purported prosecutorial errors and misconduct described above. Pet. at 3. This argument is without merit. As previously discussed, the alleged prosecutorial errors at issue were either (1) not errors or (2) did not substantially prejudice Bowman. In any event, the failure to object did not constitute a procedural forfeiture on direct appeal. Indeed, the Appellate Division addressed this argument and rejected it on the merits. *Bowman*, 872 N.Y.S.2d at 152.

Second, Bowman argues that "his attorney did not advise him of the plea that was being offered prior to trial; did not inform him of the maximum legal sentence; failed to request an affirmative defense to robbery in the first degree; and failed to conduct an investigation of the facts and law of the case." *People v. Bowman*, Ind. No. 2598-04 (N.Y. Sup. Ct. Oct. 7, 2010), at 1 [hereinafter Oct. 7 Mem.], ECF No. 17-1. On a motion to vacate the judgment and sentence in this case, the New York Supreme Court addressed these arguments and held that Bowman "failed to establish that he received ineffective assistance of counsel" and that "[a] review of the record demonstrates that [Bowman's] attorney did provide him with effective assistance of counsel." Oct. 7 Mem. at 6 (explicitly applying *Strickland v. Washington*, 466 U.S. 668 (1984)). The Appellate Division denied leave to appeal from that ruling. *People v. Bowman*, No. 2011-08398 (N.Y. App. Div. Oct. 20, 2011), at 1, ECF No. 17-2.

The New York Supreme Court's decision was on the merits, entitling it to be "granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was reasonable." *Id*. To have been entitled to relief, Bowman had "to show both that his counsel provided deficient assistance

7

and that there was prejudice as a result." *Id*. at 787. Here, the alleged failures of Bowman's trial counsel are insufficient to surmount "*Strickland*'s high bar[.]" *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

First, Bowman's own affidavit and *pro se* submissions contradict his argument that his trial counsel failed to inform him of the details of the plea offer. Specifically, in an affidavit in support of his motion to vacate the judgment and sentence, he recounted a conversation between him and his trial counsel in which his trial counsel was "adamant" that he accept the plea offer. Second, as the New York Supreme Court explained in its ruling on Bowman's post-trial motion, he has not demonstrated how an affirmative defense regarding the displayed weapon was established at trial. Oct. 7 Mem. at 7. Thus, trial counsel "was not ineffective for not raising an affirmative defense that was not supported by the evidence." Oct. 7 Mem. at 7. Third, Bowman offers no coherent argument for what additional investigation his trial counsel might have undertaken that would have yielded evidence that would have altered the outcome of the trial. Significantly, the trial judge in this case observed that "trial counsel presented a well-reasoned and cogent defense at trial by undermining and attacking the reliability of the complaining witness and the evidence that [Bowman] displayed a firearm. This Court, having presided over the trial, is satisfied that counsel's performance met both the federal and state standard of meaningful representation." Oct. 7 Mem. at 6. Thus, the New York Supreme Court's conclusion was not an unreasonable application of *Strickland*. Indeed, Bowman has not come close to overcoming the AEDPA hurdle described in *Harrington*.

## IV. Batson *Claims*

Bowman argues that the prosecutor struck four jurors based upon their race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1985). Specifically, Bowman alleges that the prosecutor peremptorily challenged four out of the five African-American prospective jurors and that the

reasons the prosecutor supplied in response to Bowman's *Batson* challenge were pretextual. Pet. at 2; Def. App. Br. at 24. After the *Batson* objections were raised during voir dire, the trial judge found that Bowman had made a *prima facie* showing sufficient to require the prosecutor to justify the exercise of the peremptory strikes. After reviewing the record, I have decided to appoint counsel to represent Bowman and argue this claim on his behalf.

## CONCLUSION

The petition is denied with respect to all the grounds raised except for the claims raised pursuant to *Batson*. I defer consideration of the *Batson* claims and appoint Jane S. Smith, Esq., to represent Bowman.

**SO ORDERED.**

Brooklyn, New York
September 26, 2013

/s/
Edward R. Korman
Senior United States District Judge